# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

HADASSAH FEINBERG,

        Plaintiff,

        v.

FERDINAND CINTRON, JR., JOSH
SHAPIRO, FRANCIS CHARDO,
COLIN ZWALLY, SCOTT SMITH,
MICHELLE AVERY, EMILY HOFFMAN,
JOSHUA YOUNG, JEFF ENDERS,
STEPHEN LIBHART, SALLY LUPINI,
ERIKA MARTEL, CARRIE SELF, GABI
WILLIAMS, VALERIE ARKOOSH,
VINCENT PAESE, ADAM YOUNG,
LAVAL MILLER-WILSON, ANDREA
BANKES, LARRY KRASNER, COREY
DICKERSON, ANDREW BATH, LEE
ANN TARASI, CHRISTIAN RIBEC,
ROBERT MARTIN, MARCIE SMITH,
ERIC SMITH, ROSA CRUZ, MANDJOU
SYLLA, JULIE REIS, JOSHUA
APPLEBY, CURRIN HAINES-YODER,
KATHRYN CROWELL, KENNY YOUNG,
KIM DEIBLER, MARISA MCCLELLAN,
NOELLE BARRETT, GEORGE P.
HARTWICK, III., ALYSSA SCHATZ,
ANDREA MARTIN, ALLISON VAJDIC,
SEAN MCCORMACK, TAMARA B.
WILLIS, LISA WHEELER, JOHN F.
CHERRY, WAYNE A. JACOBS,
MICHAEL PALERMO, JOHN J.
MCNALLY, MATTHEW P. SMITH,
KIMBERLY KARDELIS, SAM
GOLDBERG, EDWARD E. GUIDO,
BRIDGET WHITLEY, BRAD WINNICK,
JAMES SCHWARTZMAN, SETH

CIVIL CASE NO. GLR 24 CV 1957

——— FILED   ——— ENTERED
——— LOGGED  ——— RECEIVED

JUL 0 3 2024

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

**JURY TRIAL DEMANDED**

**ELECTRONIC FILING**

1

WILLIAMS, BRIAN WOLFE, MARLON |
OSBOURNE, PAIGE KULSA, |
BRYAN R. HENNEMAN, ROGETTE |
HARRIS, AMANDA OZENBAUGH, |
STEPHEN OLSZEWSKI, TOM |
MCGARRITY, THOMAS CARTER, |
AND ANNA M. CIARDI, et al. |

Defendants,

## COMPLAINT FOR VIOLATION OF CRIMES DEFINED BY THE FEDERAL RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") FOR INJUNCTION, COMPENSATORY, AND NOMINAL RELIEF

AND NOW comes Plaintiff, aka "Hadassah Feinberg", *pro se*, and

states the following claims for relief for the violation and offense of THE

FEDERAL (RACKETEER INFLUENCED AND CORRUPT

ORGANIZATIONS) ACT, 18 U.S.C. §§ 19961-68 for the said accused,

Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle

Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally

Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval

Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian

Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric

Smith, Rosa Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn

Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan,

Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic,

Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-

Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel,

Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith,

Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley,

Brad Winnick, Sam Goldberg, James Schwartzman, Seth Williams, Larry

Krasner, Marlon Osbourne, and Stephen Olszewski individually and as

persons concerned in the commission of a crime, and together with co-

conspirators, in Baltimore City, and the State of Maryland, and Counties of

Dauphin and Montgomery, in the State of Pennsylvania, on and between

the 26th day of January 2011 and the 4th day of June 2024, while

associated with an enterprise, unlawfully conspired and endeavored to

conduct and participate in, directly and indirectly, such enterprise through a

pattern of racketeering activity in violation of 18 U.S.C. §§ 19961-68, as

described below and incorporated by reference as if fully set forth herein,

contrary to state and federal laws of said State, the good order, peace, and

dignity thereof;

## **INTRODUCTION**

1.    On October 22, 2023, Defendant Ferdinand Citron, a Law

Enforcement Officer for Baltimore City Police Department received a report

that Plaintiff and her four minor children were being harassed, intimidated,

and threatened in and out of their home, county, and state by way of

intimidation, and retaliation between October 18, 2023, through October 22, 2023. The Defendant failed to file a police report and respond to the address and location where the Plaintiff and her children were seeking refuge. The Defendant failed to protect the Plaintiff and her children by way of his moral, ethical, civic, and sworn official duties to intervene in, document, and assist the Plaintiff based on allegations raised. He resides in Maryland and therefore jurisdiction is established in the State of Maryland.

2.     Defendant Josh Shapiro failed his duties as governor to protect and intervene with Plaintiff and her four minor children who were being harassed, intimidated, and threatened in and out of their home, county, and state by way of intimidation, and retaliation between October 18, 2023, through June 4, 2024. The Defendant failed to protect the Plaintiff which violated his moral, ethical, civic, and sworn official duties to assist the public with crimes and misconduct being committed by state actors in his jurisdiction. Defendant Josh Shapiro is active Governor for the State of Pennsylvania.

3.     Defendants Josh Shapiro, Stephen Olszewski, Seth Williams, Larry Krasner, and Marlon Osbourne who are residents of Florida and Pennsylvania, mostly high-ranking officials and medical examiners, were

informed and had access to physical evidence suggesting that Ellen Greenberg was murdered, stabbed, and strangled, on January 26, 2011, in her apartment. Based on inconsistent reports from her fiancé, Sam Goldberg, and based on the evidence obtained from witnesses, the autopsy, and process of elimination, probable cause was readily accessible and evident to conclude that murder was committed by Sam Goldberg and that his uncle James Schwartzman, who he contacted prior to calling 911, conspired with his nephew to destroy evidence on Ellen Greenberg's electronics before the police could investigate the crime scene.

4.   Defendant Goldberg and Defendant Shapiro grew up together in the Jewish Community and went to the same school. It was apparent on its face that Defendant Goldberg obstructed justice, and gave suggestive reports to emergency personnel, to manipulate the outcome of the crime. The Defendants failed to prosecute, investigate, and disclose evidence to the Greenberg family, who's elderly parents have spent nearly a decade and $500,000, just to get the city of Philadelphia to transfer back their daughters cause of death from a suicide to a homicide so it can be properly investigated. Defendant Shapiro when confronted with the Greenberg's in 2023, rejected their attempts to communicate. The Pennsylvania State

Police assisted the Defendant in barring the parents from approaching. In addition, Defendant Shapiro unethically and knowingly accepted monetary donations to his campaign by Defendant Goldberg's family, solidifying a conflict of interest and illegal bribe. Defendant Shapiro has failed hundreds of victims to protect the Enterprise and Racket. He was acting Attorney General between 2017-2023 and delayed justice by disregarding the case and sending it back and forth to the District Attorney's office for four years. He was also Commissioner in Montgomery County between 2012-2017 around the date of the stabbing and had relationships with Rufus Seth Williams who was District Attorney at the time.

5.     Defendant Williams commits ongoing RICO crimes and has already been convicted for unrelated offenses and sentenced to five years in prison for a bribery charge. Plaintiff contacted Defendant Williams in May 2024, at which time he became notably defensive and threatened to sue the Plaintiff with defamation if she brought a claim against him for organized crime. He also deleted portions of communications on twitter with the Plaintiff, and unfollowed other victims who have connections to the Plaintiff. Defendant Williams had a clear and underlying duty to prosecute Defendant Goldberg and Defendant Schwartzman for conspiracy to conceal and obstruct the murder of Ellen Greenberg. He intentionally failed

to prosecute them for financial gain and their official capacities in the State

of Pennsylvania and there is probable cause to conclude that he accepted

bribes from them like he did with the other charges he was sentenced for.

He too is dedicated to maintaining the Enterprise.

6.    Defendant Larry Krasner was private counsel for the Greenberg

family after Ellen Greenberg's murder and therefore had a fiduciary duty to

legally advise them and inform them of the corruption being committed by

the high-ranking officials he had worked with. By bidding for and accepting

the position as Philadelphia District Attorney he engaged in activities that

contradicted his fiduciary duties to the Greenberg's. He is active District

Attorney for Philadelphia, Pennsylvania. He is maintaining silence to

ensure that the Enterprise is continued. Defendant Marlon Osbourne was

Medical Examiner for Philadelphia during the investigation of Ellen

Greenberg's murder. He originally deemed Ellen Greenberg's death a

homicide but after meeting with high-ranking government officials on

February 28, 2011, he knowingly changed it to a suicide, either by

extortion, or bribe on April 4, 2011. He left the State of Pennsylvania in

2014 and now resides in Florida. This case is multi-jurisdictional because

all the Defendants are spread out in different states. Defendant Stephen

Olszewski, an investigator with the Philadelphia Medical Examiners Office,

intentionally obstructed justice and omitted pertinent facts in the autopsy to alter the outcome of the investigation against Defendant Goldberg. It is noted in the Memorandum Opinion filed on September 13, 2023, in the Commonwealth Court of Pennsylvania. There are three active cases in the Pennsylvania Commonwealth Court. The Defendants preliminary objections have been dismissed as moot.

7.    Defendant Shapiro was informed by a Grand Jury that Jarrod Tutko's death on August 1, 2014, was a preventable fatality and was a direct result of negligence by Defendant's listed herein. Defendant Shapiro intentionally failed to bring charges of child endangerment and prosecute the county Defendants in efforts to obstruct justice and protect his colleagues from prosecution despite his sworn duties and oath to the public. Defendant Josh Shapiro was acting Attorney General between 2017-2023.

8.    Defendant John F. Cherry, along with other Defendants herein extorted by way of threats and false statements and permanently removed the custody of Matthew and Carolyn Peterson's six adopted children in 2019. He threatened to incarcerate them if they exposed the crimes committed by some of the Defendants including Defendant Lee Ann Tarasi. Defendant Tarasi also conspired with the same Defendants to obstruct

justice against the Plaintiff. Defendant John F. Cherry was the President Judge for the Dauphin County Court of Common Pleas until 2024. At this time there is a lawsuit against the President Judge of the Dauphin County Court of Common Pleas for willfully engaging in misconduct and authorizing the Enterprise to continue its existence.

9.   Defendant Ferdinand Cintron, a Maryland resident, and the other Defendants charged in this lawsuit failed their ethical, professional, civic, and sworn official duties to protect the public, and deliver justice and they knowingly and willfully joined a conspiracy to unlawfully obstruct justice, conceal evidence, and delay justice for the Plaintiff and her children, the Smith children, Ellen Greenberg, Jarrod Tutko, Matthew and Carolyn Peterson, Daniel Harris, and unknown others. That conspiracy contained a common plan and purpose to commit two or more acts of racketeering activity in Baltimore City, Maryland, Dauphin and Montgomery County, Pennsylvania, and elsewhere in the State of Maryland and the State of Pennsylvania.

## **THE ENTERPRISE**

10.  At all times relevant to this Count of the lawsuit, the Defendants, as well as others not named as Defendants, unlawfully conspired and endeavored to conduct and participate in a criminal enterprise in Baltimore

City, Maryland, Dauphin County, and Montgomery County, Pennsylvania, and elsewhere. Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young (aka AJ Young), Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda, Ozenbaugh, George P. Hartwick III, Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Deborah Smyre, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Sam Goldberg, James Schwartzman, Seth Williams, Larry Krasner, Marlon Osbourne, and Stephen Olszewski co-conspirators Individual 1 through Individual 65, and others known and unknown to the Plaintiff, constituted a criminal organization whose members and associates engaged in various related criminal activities including, but not limited to, corruption, obstruction of justice, extortion,

bribery, kidnapping, influencing witnesses, intimidation of a witness, conspiracy to defraud the state, acts involving theft, and perjury.

11.  This criminal organization constituted an enterprise as that term is defined in 18 U.S.C. §§ 19961-68, that is, a group of individuals associated in fact. The Defendants and other members and associates of the enterprise had connections and relationships with one another and with the enterprise. The enterprise constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise operated in Baltimore City, Maryland, Dauphin, and Montgomery County, Pennsylvania, and elsewhere in the State of Pennsylvania. The enterprise operated for a period, sufficient to permit its members and associates to pursue its objectives. In total, the enterprise operated for a minimum of 14 years.

## MANNER AND METHODS OF THE ENTERPRISE

12.  The manner and methods used by the Defendants and other members and associates of the enterprise to further the goals of the enterprise and to achieve its purposes included, but were not limited to, the following:

### Corruption

13.  Members of the enterprise, including several of the Defendants, appeared at hearings in Dauphin and Cumberland County, Pennsylvania, before Judges of the Cumberland County and Dauphin County Court of Common Pleas on November 6, 2023, and November 8, 2023. At these hearings, members of the enterprise made false statements concerning child abuse of the Feinberg children and welfare of the Smith children at UPMC Hospital. The purpose of these false statements was to persuade the Court of Common Pleas to adjudicate the Feinberg children as retaliation for the Petitioners exposure of their crimes against the Smith children and maintain their high-ranking capacities and income.

14.  Members of the enterprise corruptly solicited local, state, and federal law enforcement officers in Maryland, Virginia, and Pennsylvania to assist them with the purpose of concealing the crimes exposed by the Petitioner. Members of the enterprise also made false statements to state legislators and federal law enforcement officers during meetings from January 26, 2011, through May 15, 2024.

15.  Members of the enterprise, including several of the Defendants, appeared at hearings in Dauphin County, Pennsylvania, before Judges of the Dauphin County Court of Common Pleas around 2019. At these hearings, members of the enterprise made false statements concerning

child abuse of the Peterson children. The six Peterson children were
Adjudicated Dependent even though Matthew and Carolyn Peterson were
never convicted of crimes. The Defendants extorted the Petersons to
prevent exposure of their corrupt actions. The purpose of the outcome was
to conceal the corrupt actions of the Defendants and maintain their high-
ranking capacities and income.

16.  Members of the enterprise, including several of the Defendants,
appeared at hearings in Montgomery County, Pennsylvania, before Judges
of the Appellate and Court of Common Pleas around between 2011
through 2023. At these hearings, members of the enterprise made
arguments to obstruct and delay justice in the death of Ellen Greenberg.
They used delay tactics to withhold evidence including the 911 calls,
autopsy report, and witness testimony. The purpose of the outcome was to
conceal the corrupt actions of the Defendants and maintain their high-
ranking capacities and income.

17.  Members of the enterprise, including several of the Defendants,
appeared at hearings in Dauphin County, Pennsylvania, before Judges of
the Dauphin County Court of Common Pleas around 2015. At these
hearings, members of the enterprise gave false testimony and concealed
facts to obstruct justice and prevent accountability. The purpose of the

outcome was to conceal the corrupt actions of the Defendants and maintain their high-ranking capacities and income.

## BRIBERY

18.    Members of the enterprise, including several of the Defendants in Maryland and the State of Pennsylvania, gave and accepted bribes from the other Defendants labeled as "campaign donations and endorsements". The purpose of the outcome was to conceal the corrupt actions of the Defendants and maintain their high-ranking capacities and income.to promote, endorse, influence, and continue to obstruct justice related to their .organized criminal activity. Bribery is a federal crime and listed pursuant to 18 U.S. Code § 201.

Title 18 U.S. Code § 201 states:

(a)For the purpose of this section—

(1) the term "public official" means Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror;

(2) the term "person who has been selected to be a public official" means any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed; and

(3) the term "official act" means any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before

any public official, in such official's official capacity, or in such official's place of trust or profit.

**(b)** Whoever—

**(1)** directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent—

**(A)** to influence any official act; or

**(B)** to influence such public official or person who has been selected to be a public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

**(C)** to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person;

**(2)** being a public official or person selected to be a public official, directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for:

**(A)** being influenced in the performance of any official act;

**(B)** being influenced to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States; or

**(C)** being induced to do or omit to do any act in violation of the official duty of such official or person;

**(3)** directly or indirectly, corruptly gives, offers, or promises anything of value to any person, or offers or promises such person to give anything of value to any other person or entity, with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency,

commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or with intent to influence such person to absent himself therefrom;

**(4)** directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity in return for being influenced in testimony under oath or affirmation as a witness upon any such trial, hearing, or other proceeding, or in return for absenting himself therefrom; shall be fined under this title or not more than three times the monetary equivalent of the thing of value, whichever is greater, or imprisoned for not more than fifteen years, or both, and may be disqualified from holding any office of honor, trust, or profit under the United States.

**(c)** Whoever—

    **(1)** otherwise than as provided by law for the proper discharge of official duty—

        **(A)** directly or indirectly gives, offers, or promises anything of value to any <u>public official</u>, former public official, or person selected to be a <u>public official</u>, for or because of any <u>official act</u> performed or to be performed by such <u>public official</u>, former <u>public official</u>, or person selected to be a <u>public official</u>; or

        **(B)** being a <u>public official</u>, former <u>public official</u>, or person selected to be a <u>public official</u>, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of any <u>official act</u> performed or to be performed by such official or person;

    **(2)** directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;

**(3)** directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon any such trial, hearing, or other proceeding, or for or because of such person's absence therefrom;
shall be fined under this title or imprisoned for not more than two years, or both.

**(d)** Paragraphs (3) and (4) of subsection (b) and paragraphs (2) and (3) of subsection (c) shall not be construed to prohibit the payment or receipt of witness fees provided by law, or the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying.

**(e)** The offenses and penalties prescribed in this section are separate from and in addition to those prescribed in sections 1503, 1504, and 1505 of this title.

19.  Members of the enterprise, including one of the Defendants in the State of Pennsylvania, accepted bribes and was sentenced to five years of federal prison for the criminal act of Bribery between the dates that the organized crime was being committed and maintained as an entity. The purpose of the outcome was to gain financial interest and promote, endorse, influence, and continue to receive bribes connected with the organized criminal activity.

## **OBSTRUCTION OF JUSTICE**

20.  Members of the enterprise, including some of the Defendants obstructed justice in Maryland, and in the State of Pennsylvania, by

withholding evidence requested through the Office of Open Records, Court Subpoenas, and Requests made through the Freedom of Information Act between January 26, 2011, and May 15, 2024.

21.  Members of the enterprise also corruptly solicited Maryland and Pennsylvania officials, to violate their oaths to the Maryland and Pennsylvania Constitution and to the United States Constitution by unlawfully concealing medical records, police reports, and tampering with witness testimony relevant to the crimes committed between January 26, 2011, through May 15, 2024.

## EXTORTION

22.  Members of the enterprise, including several of the Defendants extorted victims in the State of Pennsylvania, by verbally threatening both the Plaintiff and the Petersons to prevent them from exposing their crimes. The Defendants threatened to incarcerate Matthew and Carolyn Peterson if they exposed the crimes of corruption. The Defendants threatened the Plaintiff to charge her child endangerment and false statements if she continued to file reports to the police.

## WITNESS TAMPERING

23.  Members of the enterprise, including several of the Defendants tampered with witnesses in the State of Maryland and Pennsylvania, by

influencing, intimidating, and threatening witnesses regarding the crimes committed between January 26, 2011, through May 15, 2024. Around March 2024, Mindy Kell, a Pennsylvania State investigator was reportedly threatened and intimidated from continuing the investigation which she was assigned to against Defendant Crowell. As a result, she resigned from the case and is no longer employed with the Pennsylvania Department of Bureau of Enforcement and Investigation.

## **KIDNAPPING**

24.  Members of the enterprise, including several of the Defendants kidnapped the Petitioners children and the Petersons children by fabricating and falsifying statements to the Court of Common Pleas to obtain a warrant for the removal of the children through the Courts without physical evidence of abuse.

## **SUMMARY OF THE CASE**

25.   This is primarily a civil "RICO" action for crimes committed by the Defendants under the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"), for declaratory and injunctive relief, as well as nominal, punitive, and compensatory relief, to redress and to prevent the deprivation of rights, and privileges, as a result of the RICO crimes committed by the Defendants including

corruption, bribery, extortion, kidnapping, witness tampering, and

obstruction of justice.

26.     In Maryland and Pennsylvania, Defendants are Individuals who

are employed in official capacities operating in municipal, county, state, and

federal positions. The Defendants, in their individual and personal

capacities, committed RICO crimes including, but not limited to fraud,

falsified statements to public officials, and concealed pertinent information

to obstruct justice in botched child abuse investigation, obstructed and

delayed justice in the conspiracy and murder of Ellen Greenberg, extorted

the Peterson family, and obstructed justice after they neglected to protect

the Tutko children. The crimes are related and linked because they all

share common Defendants, locations, and sole objectives for organized

crime. The purpose of the entity and the goal of the Defendants is to

maintain government control, abuse of authority, and security of financial

gain.

## JURISDICTION AND VENUE

27.     This is an action that primarily arises under the Federal

Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c))

("Federal RICO"), to redress the deprivation, of rights, and privileges for the

Plaintiff and public's interest as a whole, and hold accountable the

Defendants who committed crimes under the RICO umbrella to evade liability, profit financially, and maintain authoritative control with the means of Organized Crime in the State of Maryland and Pennsylvania.

28.    This action is an actual controversy in which Plaintiff seeks monetary damages because of the injuries and harm caused by the Defendants who violated the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"). Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiff and her minor children and grant further necessary and proper compensatory and nominal relief with treble damages based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331—because the claims arise under the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO").Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a Defendant, is domiciled in and operates or does significant business in this judicial district and pursuant to 18 U.S.C § 1965 which states:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs. (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that

purpose may be served in any judicial district of the United States by the marshal thereof.

(c) In any civil or criminal action or proceeding instituted by the United States under this chapter in the district court of the United States for any judicial district, subpoenas issued by such court to compel the attendance of witnesses may be served in any other judicial district, except that in any civil action or proceeding no such subpoena shall be issued for service upon any individual who resides in another district at a place more than one hundred miles from the place at which such court is held without approval given by a judge of such court upon a showing of good cause.

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.
(Added Pub. L. 91–452, title IX, §901(a), Oct. 15, 1970, 84 Stat. 944.)

## PARTIES

29.    Plaintiff, Hadassah Feinberg, a previous resident of Baltimore, Maryland, resided in Dauphin and Cumberland County, Pennsylvania between 2011 through 2024.

30.    Defendant Ferdinand Cintron Jr., in his individual and personal capacity is employed by Baltimore City Police Department located at 601 East Fayette Street, Baltimore, Maryland 21202, and resides in the State of Maryland.

31.    Defendant Josh Shapiro in his individual and personal capacity is employed as Governor of Pennsylvania located at 2035 North Front Street Harrisburg, Pennsylvania 17102.

32.     Defendant Francis Chardo, Esq., in his individual and personal capacity is employed by Dauphin County District Attorney's office located at 101 Market Street, Harrisburg, Pa. 17101.

33.     Defendant Colin Zwally, in his individual and personal capacity is employed by Dauphin County District Attorney located at 101 Market Street, Harrisburg, Pa. 17101.

34.     Defendant Michelle Avery, in her individual and personal capacity is employed by Dauphin County District Attorney located at 101 Market Street, Harrisburg, Pa. 17101.

35.     Defendant Emily Hoffman, in her individual and personal capacity, is employed by Dauphin County District Attorney located at 101 Market Street, Harrisburg, Pa. 17101.

36.     Defendant Joshua Young, in his individual and personal capacity, is employed by Office of Open Records-Commonwealth of Pennsylvania located at 333 Market Street, 16th Floor, Harrisburg, Pa. 17101.

37.     Defendant Wayne A. Jacobs, in his individual and personal capacity is employed as Special Agent for the FBI Philadelphia Field Office located at 600 Arch Street #8, Philadelphia, Pa. 19106.

38.    Defendant Jeff Enders, in his individual and personal capacity is employed as Director of Dauphin County Department of Public Safety located at 911 Gibson Blvd. Steelton, Pa. 17113.

39.    Defendant Stephen Libhart, in his individual and personal capacity is employed as Court Administrator of Dauphin County Common Pleas located at 101 Market Street, Harrisburg, Pa. 17101.

40.    Defendant Sally Lupini, in her individual and personal capacity is employed for Pennsylvania Department of Human Services, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

41.    Defendant Carrie Self, in her individual and personal capacity is employed by the Pennsylvania Department of Human Services, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

42.    Defendant Gabi Williams, in her individual and personal capacity is employed by the Pennsylvania Department of Human Services, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

43.    Defendant Valerie Arkoosh, in her individual and personal capacity is employed as Secretary of the Pennsylvania Department of Human Services, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

44.     Defendant Vincent Paese, in his individual and personal capacity as Open Records Officer in the Dauphin County Office of Open Records, located at 333 Market Street, 16th Floor, Harrisburg, Pa. 17101.

45.     Defendant Laval Miller-Wilson, in her individual and personal capacity is employed as Deputy Secretary for Office of Children, Youth, and Families, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

46.     Defendant Andrea Bankes, in her individual and personal capacity is employed as Director of Open Records for the Department of Human Services, located at 2525 North 7th Street, Harrisburg, Pa. 17110.

47.     Defendant Corey Dickerson, in his individual and personal capacity is employed as Chief in Dauphin County's Criminal Investigative Division, located at 2 South 2nd Street, #3, Harrisburg, Pa. 17101.

48.     Defendant Andrew Bath, in his individual and personal capacity is employed as Detective in the Harrisburg Police Department, located at 123 Walnut Street, #217, Harrisburg, Pa. 17101.

49.     Defendant Christian Ribec, in his individual and personal capacity is employed as law enforcement officer for the Harrisburg Police Department, located at 123 Walnut Street, #217, Harrisburg, Pa. 17101.

50.     Defendant Adam Young, in his individual and personal capacity, is employed as law enforcement officer for the Susquehanna

Township Police Department, located at 1900 Linglestown Rd., Harrisburg, Pa. 17110.

51.    Defendant Lee Ann Tarasi, in her individual and personal capacity is employed as Detective for the Susquehanna Township Police Department, located at 1900 Linglestown Rd., Harrisburg, Pa. 17110.

52.    Defendant Robert Martin, in his individual and personal capacity is employed as Chief of Police for the Susquehanna Township Police Department, located at 1900 Linglestown Road, Harrisburg, Pa. 17110.

53.    Defendant Marcie Smith, in her individual and personal capacity is a resident of Pennsylvania located at 503 State Street, Steelton, Pa. 17061.

54.    Defendant Eric Smith, in his individual and personal civilian capacity is a resident of Pennsylvania, located at 503 State Street, Steelton, Pa. 17061.

55.    Defendant Rosa Cruz, in her individual and personal civilian capacity is a resident of Pennsylvania, located at 63 North 18th Street, Harrisburg, Pa. 17103.

56.    Defendant Mandjou Sylla, in his individual and personal civilian capacity is a resident of Pennsylvania and located at 63 North 18th street, Harrisburg, Pa. 17103.

57.    Defendant Joshua Appleby, in his individual and personal capacity is employed by the Harrisburg City Police Department, located at 123 Walnut Street, #217, Harrisburg, Pa. 17101.

58.    Defendant Alyssa Schatz, in her individual and personal capacity is employed by UPMC Harrisburg Hospital, located at 111 S. Front Street, Harrisburg, Pa. 17101.

59.    Defendant Kathryn Crowell, in her individual and personal capacity as is employed by Penn State Hershey Hospital, located at 500 University Drive, Hershey, Pa 17033.

60.    Defendant Kenny Young, in his individual and personal capacity is employed by the Harrisburg City Police Department, located at 123 Walnut Street, Harrisburg, Pa 17101.

61.    Defendant Tom McGarrity, in his individual and personal capacity as Captain of the Harrisburg City Police Department, located at 123 Walnut Street, #217, Harrisburg, Pa. 17101

69.     Defendant Amanda Ozenbaugh, in her individual and personal capacity as Supervisor for Dauphin County Children and Youth, located at 1001 North 6th Street, Harrisburg, Pa. 17102.

70.     Defendant George P. Hartwick III, in his individual and personal official capacity as Dauphin County Commissioner, located at 2 South 2nd Street, 4th Floor, Harrisburg, Pa. 17101.

71.     Defendant Julie Reis, in her individual and personal capacity as Secretary for the Dauphin County Commissioners Office, located at 2 South 2nd Street, 4th Floor, Harrisburg, Pa. 17101.

72.     Defendant Currin Haines-Yoder, in her individual and personal capacity as Supervisor for Dauphin County Children and Youth, located at 1001 North 6th Street, Harrisburg, Pa. 17102.

73.     Defendant Sean McCormack, in his individual and personal capacity as District Attorney for Cumberland County District Attorney, located at 1 Courthouse Square, Floor 2, Carlisle, Pa. 17013.

74.     Defendant Tamara B. Willis, in her individual and personal capacity as Superintendent for the Susquehanna Township School District, 1201 North Progress Avenue, Harrisburg, Pa. 17109.

75.   Defendant Erika Martel, in her individual and personal capacity as an Employee of Dauphin County Children and Youth, located at 1001 North 6th Street, Harrisburg, Pa. 17102.

76.   Defendant Michael Palermo, in his individual and personal capacity as Court-Appointed Attorney, for Dauphin County, located at 3300 E. Trindle Rd., Camp Hill, Pa. 17011.

77.   Defendant John F. Cherry, in his individual and personal capacity as Dauphin County Court of Common Pleas Judge, located at 101 Market Street, Harrisburg, Pa. 17101.

78. .  Defendant John J. McNally in his individual and personal capacity as Dauphin County Court of Common Pleas Judge, located at 101 Market Street, Harrisburg, Pa. 17101.

79.   Defendant Matthew P. Smith, in his individual and personal capacity as Cumberland County Court of Common Pleas Judge, located at 1 Courthouse Square, Carlisle, Pa. 17013.

80.   Defendant Kimberley Kardelis, in her individual and personal capacity as Solicitor for Dauphin County Children and Youth, located at 1001 North 6th Street, Harrisburg, Pa. 17102.

81.    Defendant Edward E. Guido, in his individual and personal capacity as Cumberland County Common Pleas Judge, located at 1 Courthouse Square, Carlisle, Pa. 17013.

82.    Defendant Marlon Osbourne, in his individual and personal capacity as Medical Examiner, located at 3561 SW 10th St. Pompano Beach, FL 33069.

83.    Defendant Larry Krasner, in his individual and personal capacity as Greenberg Counsel and District Attorney, located at 3 S Penn Sq, Philadelphia, PA 19107.

84.    Defendant Andrea Martin, in his individual and personal capacity as Principal of Susquehanna Township School located at 1201 N Progress Ave, Harrisburg, PA 17109.

85.    Defendant Samuel Goldberg, in his individual and personal capacity as NBC reporter located at 130 E 18th St #6G New York, NY 10003.

86.    Defendant Bridget Whitley, in her individual and personal capacity as criminal law clerk for the Dauphin County Court of Common Pleas located at 101 Market Street, Harrisburg, Pa. 17101.

87.     Defendant Brad Winnick, in his individual and personal capacity as law clerk for the Dauphin County Court of Common Pleas located at 101 Market Street, Harrisburg, Pa. 17101.

88.     Defendant James Schwartzman, in his individual and personal capacity as Partner and Chair of the Ethics and Professional Responsibility Group at Stevens & Lee Law firm located at 1500 Market St 18th Floor, Philadelphia, PA.

89.     Defendant Rufus Seth Williams, in his individual and personal capacity as prior district attorney located at 1322 S. 26TH STREET, Philadelphia, Pa. 19146.

90.     Defendant Brian Wolfe, in his individual and personal capacity as Lt. of the Pennsylvania State Police located at 8000 Bretz Drive, Harrisburg, PA 17112

91.     Defendant Paige Kulsa, in her individual and personal capacity as state trooper of the Pennsylvania State Police located at     2 Dunwoody Drive Carlisle, PA 17015.

92.     Defendant Bryan R. Henneman, in his individual and personal capacity as Lt. of the Pennsylvania State Police located at 2 Dunwoody Drive Carlisle, PA 17015.

93.     Defendant Rogette Harris, in her individual and personal capacity as assistant deputy for the Dauphin County Court of Common Pleas located at 101 Market Street, Harrisburg, Pa. 17101.

94.     Defendant Stephen Olszewski, in his individual and personal capacity as investigator located at 240 Spring Garden St. Philadelphia PA 19123

95.     Defendant Anna M. Ciardi is Disciplinary Counsel for the Supreme Court of Pennsylvania located at 437 Grant Street, Suite 1300, Pittsburgh, Pa. 15219

## FACTUAL ALLEGATIONS

96.     On October 12, 2023, at 12:40 p.m., the Plaintiff was notified by two credible members of the Jewish Community, Faye Doctrow, and Samara Sofian, that the four Smith children had been missing for six days. The Plaintiff reported the missing children Dauphin County Dispatch 9-1-1.

97.     On October 12, 2023, at 6:00 p.m., the Smith children were located by Defendant Christian Ribec of the Harrisburg Police Department at 63 North 18th Street, Harrisburg Pa. 17103. The children were found soiled in feces, and unclothed. They had been reportedly abandoned by Defendant Marcie Gail Smith, their biological mother, and primary care giver.

98.   On October 12, 2023, at 7:00 p.m. the Plaintiff voluntarily assisted the Smith children, provided them clothing from her trunk in presence of multiple witnesses.

99.   On October 12, 2023, Dauphin County CYS Supervisor, Defendant Noelle Barrett, refused to arrive to the scene to aid the Smith children. The Plaintiff transported the four Smith children to her home, released to her care by Defendant Christian Ribec, of Harrisburg Police Department. Plaintiff was assisted by a social worker, and another friend, in transporting the four Smith children to her home located at 3807 Bonnyview Road, Harrisburg, PA 17109.

100.  Upon arrival, Plaintiff bathed the Smith children where she noted numerous bruises on their bodies. She made a report to Childline and two police departments, and tried to contact Defendants again, but to no avail.

101.   On October 13, 2023, Plaintiff sent Smith child, E.J.S. to school, and took the younger three Smith children to UPMC emergency room located at 111 S. Front St, Harrisburg, PA 17101 where they were diagnosed with suspected child abuse by Defendant Alyssa Schatz, PA-C. Defendant Alyssa Schatz made a police report and called ChildLine. At 3:30 p.m., Plaintiff contacted Defendant George Hartwick III because

34

Dauphin County CYS staff were not coming to aid the Smith children. She talked to his secretary Defendant Julie Reis.

102.   On October 13, 2023, at 6:30 p.m. Defendant, Dauphin County Supervisor Defendant Scott Smith, came out to the Plaintiff's home to visit the Smith children. Defendant Smith photographed the Smith's injuries. During the house tour Defendant Smith asked about A.N.F.'s safety bed. Plaintiff provided him with medical documentation prescribed by a pediatrician and explained that the bed was for A.N.F. safety at night. He had no concern and refused to take documentation offered by the Plaintiff.

103.   On October 15, 2023, Defendants consented to arrange transportation for the Smith Children from the Plaintiffs home to respective schools for kinship purposes. There were no concerns mentioned by DCCYS regarding Plaintiff's ability to care for her own four children, and four more young children, totaling 8 children, by herself as a single mother.

104.   On October 16, 2023, at 9:30 a.m. DCCYS facilitated a meeting with the Smith children's biological mother, Defendant Marcie Smith and the Plaintiff, regarding kinship. They did not inform the biological father, Defendant Eric Smith to attend. At the meeting, Defendant Marcie Smith, agreed for her children to remain with the Plaintiff and voluntarily signed legal custody to DCCYS for E.J.S. (DOB 12/17/2017), E.S. (DOB

6/18/2020), E.R.S. (6/18/2020), and (E.N.S. 6/18/2021). At the meeting, Marcie Smith lied about why she was unable to obtain housing for her family. The Defendant had a domestic violence charge for serious bodily injury. She falsely accused Defendant Eric Smith, the father, and informed DCCYS that he is the violent one.

105.  On October 16, 2023, at 3:30 p.m. Defendant Allison Vajdic arrived at Plaintiffs home located at 3807 Bonnyview Road, Harrisburg, Pa 17109 to initiate intake for kinship. She did a tour of the Plaintiff's home. No concerns were noted. During the visit, Plaintiff disputed the agency of choice. She requested to work with Pa. Mentor instead of Families United, as she was already in communication with that agency. DCCYS verbally threatened the Plaintiff that Title IV-E funds would be withheld for the Smith children's kinship if she did not agree to work with Families United. The Plaintiff stood her ground and told them she would not agree.

106.  On October 17, 2023, Plaintiff filed a complaint against DCCYS for withholding funds for the Smith children's basic needs under Title IV-E and for failure to investigate the Smith children's abandonment and physical abuse. At 11:00 a.m. Plaintiff took the Smith children into Penn State Hershey Medical Center to follow up with their special child abuse unit. Plaintiff informed Defendant Dr. Kathryn Crowell of DCCYS's failure to

assist the children. Plaintiff had also sent a message through the Penn

State portal prior to the visit and received no response. During the visit,

E.S. DOB 6/18/2020, was banging his head on the hard-surfaced floor in

room 54. Defendant Crowell and her team failed to provide adequate

medical care for his needs, which was documented by Plaintiff to DCCYS

through email and telephone calls. Plaintiff served a subpoena to obtain

video footage of the incident, issued by the Cumberland Court of Common

Pleas Prothonotary Office, and filed it under civil case: *Feinberg, H. v.*

*Dauphin County CYS, et al., see* docket number 2023cv02165., However, it

was intentionally blocked by Penn State Hershey legal team, and the

footage documenting the willful fraud and child endangerment of E.S. by

hospital staff was not provided to the Plaintiff.

107.  Plaintiff informed Defendants that she could not take E.S. home

without an implemented safety plan in place due to head-banging self-

injurious behavior. Plaintiff has vast experience with behavioral therapy

from professional experience. Defendants Dr. Crowell and DCCYS staff

ignored Plaintiff's reports. At 3:00 p.m., Plaintiff was advised by a Licensed

Clinical Social Worker and Director of an Adoption and Foster care Agency

in Dauphin County, that she should inform medical staff of her timely

obligation to leave to get her own children off the bus. Since E.S. was a

danger to himself, by head-banging, he needed to remain under medical observation.

108.  Two staff on the child abuse team, one male and one female (personnel names unknown), threatened the Plaintiff stating, "If you don't take all three children home, you are not taking any of them home." They did nothing to prevent E.S. from injuring his head. Plaintiff was forced into a corner, where the safest choice was to leave E.S. in the care of medical staff, along with his two siblings, and leave to get her own biological children off the bus from school. Per the Plaintiff's request, the LCSW from Jewish Family Services, remained on the phone with Plaintiff until she stepped out of the hospital building. Plaintiff was in absolute fear of the illegal and unethical actions of the Penn State Hershey Staff. Plaintiff filed a police report against Defendant Dr. Kathryn Crowell with Officer Libby Strayer from the Derry Township Police Department, see report number DR-24-03954, for tampering with medical documentation, fraud, and failing to provide medical care to E.S.

109.  On October 18, 2023, Plaintiff visited the Harrisburg Police Department located at 123 Walnut Street, #217, Harrisburg, Pa. 17101 and Victim Witness Department located at 25 South Front Street, 7th Floor, Harrisburg, Pa. 17101 to advise and follow up on complaints about the

Smith children's endangerment by the biological mother and Defendants retaliation, fraud, obstruction of justice, and intimidation for exposing them.

110.  Subsequently, Defendant Smith filed a fabricated CPS report against Plaintiff. Plaintiff was uninformed until Defendant Smith visited the children's schools on October 19, 2023. In his report, Defendant Smith falsified statements against the Plaintiff without grounds. Plaintiff requested the records from the County and their legal counsel, Donald Carmelite, Esq., but the requests have been ignored. It is important to note, that for due process to be commenced and discovery to be conducted, the records are essential for the judicial process. By intentionally obstructing the release of records from Dauphin County Children and Youth Services, Childline reports, and Department of Human Services records, the Defendants are tactically preventing the Plaintiffs expert witness, Charles F. Lorbeer, PhD, from assessing the concerns and providing this Court with an informed statement on the matter required by a Certificate of Merit.

111.  It is under the discretion of this Court, but respectfully requested by this Plaintiff, that the Defendants be directed by official Court Order to supply and provide a notarized copy of the official Feinberg CPS record, unredacted and in its entirety, within a reasonable time frame, for

39

review, in order to execute and comply with the rules of due process and discovery pursuant to the federal laws of civil procedure.

112.  On October 19, 2023, Defendant Smith went into Sara Lindemuth Anna Carter Primary School located at 1201 North Progress Avenue, Harrisburg, Pa 17109, and into the Silver Academy private school located at 2986 North Second Street, Harrisburg, Pa. 17110, unannounced, to conduct groundless interviews from the Feinberg children without a warrant. A.N.F., E.L.F., and E.A.F. were forced against their will to cooperate with the Defendants interrogations, in a secluded room, alone with the Defendant with the door closed. Defendant Smith asked the children to tell him about "dark secrets" and attempted to coerce them to make false statements about A.N.F.'s safety bed in the Plaintiff's home. They were uncooperative. Principal Samara Sofian, the Plaintiff that she relayed to Defendant Smith that she was "Not concerned for abuse or neglect of the Feinberg children", and that she, "Takes her mandated reporting responsibilities seriously." Defendant Smith interrogated the Feinberg children for an unreasonable period. E.L.F. informed Defendant Smith that the bed was to, "Provide A.N.F. safety at night because he was a danger to himself and his family without supervision". E.L.F. informed him that A.N.F had a history of safety concerns.

113.   Defendant Smith's interview triggered excessive fear, panic, and symptoms of anxiety in A.N.F., who is an eight-year-old, verbal-autistic child, and already diagnosed with underlying anxiety. He told A.N.F. that, "He is bad, and that he is going to take his mother away". Upon the children's return from school, A.N.F. immediately exhibited severe panic attacks, causing shallow breathing, confusion, and erratic behavior. The Plaintiff called 9-1-1 twice and A.N.F. was transported to the UPMC Emergency Room located at 111 South Front Street, Harrisburg, Pa. 17101. What should have been a birthday celebration for E.A.F., turned in to a nightmare of permanent trauma.

114.   Upon arrival at the hospital, the treating physician increased A.N.F.'s anxiety medication, and he was discharged home with the Plaintiff. Plaintiff repeatedly implored law enforcement to protect her family against DCCYS employees' actions, but they declined stating, "Municipal can not intervene in County matters" and that Plaintiff should "File a complaint with Attorney General" (Corporal Glenn, Susquehanna Township Police Department).

115.   Plaintiff made multiple attempts to file complaints with Attorney General which are documented, but she was advised by staff to contact the

Department of Human Services who oversees Defendants. For days,

Plaintiff was sent in circles between authorities who refused to get involved.

116.  On October 20, 2023, Defendant Smith arrived unannounced at

UGRO Childcare Center located at 3880 Tec Port Drive, Harrisburg, Pa.

17111, where B.N.F. was enrolled part-time. Upon his arrival, daycare staff

contacted the Plaintiff to inform her that Defendant Smith was proceeding

against their request to await law enforcement presence, and/or a third-

party, as directed by the Plaintiff. Plaintiff had openly communicated with

UGRO administration about her concerns for county employee retaliation.

They were also informed that Plaintiff had been licensed as a foster care

parent and adopted through Dauphin County's recommendation in 2022,

and that Plaintiff had a verbal contract with the county to satisfy the

financial cost of B.N.F.'s attendance at UGRO, in lieu of an increased

annual per diem.

117.  Defendant Smith proceeded with the interview for a child that

was not at risk, against the directive of his custodial parent, and against the

directives of his educational guardians, in the academic setting, without

suspicion of abuse.

118.  On October 20, 2023, Plaintiff traveled with her four children to

visit family friends in Maryland and seek legal advice. During her travels,

she contacted law enforcement in Baltimore, Maryland, Defendant

Ferdinand Cintron, Jr., seeking advice against Dauphin County employees.

The officer lied about his affiliated department and did not respond to the

location of the Plaintiff and her children, and it is fair to presume, that he

contacted Dauphin County.

119.   Plaintiff proceeded with attempts to contact Maryland State

Police, and they directed Plaintiff up the chain of command. Through each

step, Plaintiff stayed in close contact and consulted with family members,

close friends, and licensed professionals, about the incidents.

120.   Plaintiff contacted multiple licensed attorneys, one of whom is

an experienced federal attorney in the Middle District Court. He requested

anonymity, but informed the Plaintiff of the statewide corruption,

intimidation, and retaliation, historically documented relating to the child

protective agency, and that successful litigation against CYS misconduct

was an uphill battle. A separate civil rights attorney offered the Plaintiff

representation on terms of executing a binding legal contract in the amount

of $100,000, but the Plaintiff could not commit for financial reasons.

121.   On October 23, 2023, Plaintiff learned that public corruption is

handled and investigated primarily by the Federal Bureau of Investigation.

Since she was out-of-state, she requested to visit the nearest FBI field

office to report the county employees abuse of power, fraud, and corruption. Plaintiff met with Supervisory Field Agent, Kenneth Keller, based in Manassas, Va., about an hour drive from her stay. Agent Keller informed her that due to jurisdiction, the Philadelphia Field Office, would be her best point of contact, but that per policy he would complete an official report. Agent Keller provided the Plaintiff with his email address and phone number. During the three-hour visit, Agent Keller and his co-agent, "Ben" observed the Plaintiff with her four children in person and made no attempt to file a ChildLine report for concerns of the Plaintiffs interactions with her children during the visit. The children were clean, fed, and dressed appropriately. Although the children became restless as the visit progressed, the agents did not pass judgement or show reason for concern with the Feinberg children.

122.  On October 24, 2023, Plaintiff returned to Dauphin County with her four children and dropped them off at school. Shortly after, Plaintiff was apprehended by a Susquehanna Township Police Officer Defendant "AJ Young", without a traffic violation. Officer Young is named a Defendant in the pending federal suit for RICO crimes. The apprehension and citation issued by Defendant Officer Young was subsequently dismissed on

December 18, 2023, after Plaintiff filed an appeal to the Magistrate Court 12-1-01. It was dismissed prior to trial.

123. Triggered by the groundless apprehension, Plaintiff knew she was in danger, and followed the suggestion of Agent Keller to visit the correct jurisdiction field office, Philadelphia FBI Office. Upon her arrival, she was turned away without interview. The Agent at the entrance refused to accept a report. Plaintiff contacted Agent Keller by phone to prove the validity. Agent Keller informed the Philadelphia Agent that the report was not yet complete in the system, but that it was pending. The Agent disregarded Keller's statements, and Plaintiff returned to Dauphin County. Upon her return, Plaintiff called the Philadelphia Field Office to provide physical and audio evidence but did not respond. An agency established to safeguard and protect, once again, failing its citizens.

124. Around March 2024, Plaintiff learned about other victims facing the same crimes committed by the Defendants through her public Facebook page, "Speak Up". Multiple victims sent the Plaintiff private messages giving witness statements to the Plaintiff regarding the corruption, extortion, and obstruction of justice committed by the Defendants under the entity between 2011 to 2024. Numerous victims have attempted to obtain assistance from the Pennsylvania Disciplinary Board

including the Plaintiff and Defendant Anna M. Ciardi has closed out the

cases without investigation for frivolous reasons and to ensure that the

Commonwealth Enterprise is protected.

125.  On April 3, 2024, Plaintiff contacted Agent Keller, in response to

an email she received from him. He informed her that despite his attempts

to communicate with the FBI Philadelphia Field Office, he has no

jurisdiction in Pennsylvania. He informed the plaintiff of her options to file a

complaint with the Department of Justice for review of the internal

handlings conducted by the Philadelphia Field Office.

126.  Plaintiff filed with the Department of Justice, and on April 16,

2024, she filed a complaint with the Government Accountability Office for

fraud, waste, and abuse by the Defendants.

127.  Contemporaneously, on April 5, 2024, Plaintiff filed with the

Dauphin County Clerk of Court an "Appeal of District Attorney's Denial" for

the Private Criminal Complaint lodged against Defendant Marcie Gail Smith

and the Defendants on February 1, 2024, at MDJ 12-1-05. Defendant ADA

Colin Zwally, who stated to the Plaintiff that he has a "job to protect" in the

presence of Defendant CID Chief Corey Dickerson. Plaintiff contacted the

Philadelphia Field Office to provide physical and audio evidence, but they

have not responded.

128.   During the unprecedented sequence of events, and without any assistance, Plaintiff was compelled to permanently leave her home with her four children. A mortgage of $2177 per month, would not outweigh the priceless cost she faced if her children were permanently separated. She had lived in Dauphin County for 25 years and was established within her community. However, the Plaintiff was obliged to prioritize the immediate risk to her family and protect her children and herself against criminal acts committed by the Defendants. Plaintiff fled Dauphin County preemptively to avoid losing her children permanently through lies, fraud, and malicious corruption. Shortly thereafter, Plaintiffs notions, and gut instinct, were confirmed regarding the Defendants intent and objective.

129.   Plaintiff is certain, and without regret, that the lifesaving decision she made to flee the Defendants crimes, is what saved her family. Matthew and Carolyn Peterson, fellow foster, and adoptive parents who positively impacted hundreds of vulnerable children, were harmed permanently without recourse by the same state actors. Their six children were trafficked by the same Defendants in 2019 on baseless grounds that were not pursued. They were verbally threatened and intimidated, by Defendant Tarasi. They were not afforded legitimate due process and were stripped of their constitutional rights under the same authority. Carolyn

47

Peterson suffered two consecutive heart attacks because of the overwhelming emotional distress. Reunification did not occur, despite the dismissal of charges. When will state actors be held liable for their white-collar crimes? Public interest in this matter is compelling. In Adams County, Pennsylvania, three state actors were recently charged with child endangerment after Iris Mummert, a fifteen-month-old baby was found deceased after the county overlooked the concerns. Will this happen to the Smith children who were abandoned by their mother, left soiled in feces, and unclothed on October 12, 2023? This is a perfect example of how the county welfare system is failing its children and failing its families. In Adams County, Pennsylvania, the employees were charged, but only due to the severity involving a death, and media exposure. The Smith children were in imminent risk, not just one child, but four children, left to fend for themselves, each one of them lacking bladder control upon discovery. To conceal, control, and keep their authoritative positions, the Defendants would rather shift blame for their mistakes and make the Plaintiff "look crazy," then accept accountability. They prefer to endanger four Smith Children and traumatize four Feinberg children, then risk losing their job or going to jail.

130.  The Defendants attempted to influence the neighboring county during their meeting, but Cumberland County conducted their own meeting separately after they had met with the Defendants. The Defendants fabricated allegations didn't sit right with them, so they didn't follow along (Sandy Gibson, LCSW).

131.  Towards the last week of October 2023, Plaintiff fled with her four children to the neighboring Cumberland County. Plaintiff consistently ensured that her children's daily attendance in their Dauphin County schools would not be affected and continued to take her children to all their scheduled medical visits in Dauphin County. No concerns were reported for neglect, abuse, or mental instability by any mandated reporter in the schools or doctors' offices. The only reports made to date, were made by individuals and state actors, who had a personal and professional interest to harm the Plaintiff and other victims to obstruct justice and continue their commission of organized criminal activity through their long-established entity which is referenced in a published book titled, "Pressed: Public Money, Private Profit: A Cautionary Tale", by Author and County Commissioner Molly Henderson.

132.  It is documented and factually supported that the Plaintiff's children were thriving on November 1-2, 2023, when B.N.F. and A.N.F.

were present at a Penn State Doctors appointment, the day preceding the

false removal of the children which alleged "imminent risk." The <u>actual risk</u>

was the Defendants corruption, and extortion, to retaliate, maintain control,

and avoid liability for their crimes.

133. In between the dates of October 18, 2023, to November 3,

2023, the Defendants used their authoritative powers to work

collaboratively with Defendant Detective Lee Tarasi and Defendant Officer

Young from the Susquehanna Township Police Department, to devise, lure,

ambush, falsely remove custody, and charge the Plaintiff with crimes she

did not commit.

134.  Unbeknownst to the Plaintiff at the time, the Defendants and

their colleagues have a vast history of committing such crimes together,

against numerous victims, and have never been investigated by any

agency. The Defendants in this case continue to be employed without

suspension, corrective action, or criminal charges, despite the heinous

crimes they have committed under the mask organized criminal entity.

135.  Defendant Lee Ann Tarasi contacted the Plaintiffs peer, Amy

Otstott, and falsely informed her that she was investigating the crimes of

the county and needed the cooperation of the Plaintiff. In response, Amy

Otstott convinced the Plaintiff to schedule a meeting with Defendant Tarasi

on November 3, 2023, at her vacant home in Dauphin County. Under the impression that a law enforcement official was assisting, Defendants successfully lured the Plaintiff back to her uninhabited Dauphin County home located at 3807 Bonnyview Road, Harrisburg, Pa. 17109, where they served her with papers to remove the care and custody of her children under falsified grounds for "imminent risk". This was commenced despite DHS's investigation conducted by Defendant Carrie Self on October 25, 2023, who claimed to "prioritize" and have more concern for the safety allegations regarding the Smith children, and not concerned for the false allegations made against the Plaintiff involving the Feinberg children. She confidentially informed the Plaintiff that Plaintiffs complaint against the Defendants preceded their retaliatory complaint, and they were not aware.

136.  On November 6, 2023, in the chambers of Defendant John J. McNally, Judge, of Dauphin County Common Pleas, Plaintiff informed him of the corruption, retaliation, and jurisdictional dispute. Defendant McNally subsequently ordered the case transfer to Cumberland County Court of Common Pleas and Cumberland County Children and Youth Services (CCCYS).

137.  On November 8, 2023, Defendant Edward E. Guido, reluctantly accepted the transferred case in Cumberland County. During the hearing,

the Plaintiff was denied her request to self-represent without justification, and appointed public counsel on the spot, who was not familiar with the case. The Plaintiff was denied her constitutional rights to due process and prevented from being able to respectively object to statements made by Defendant Wheeler who perjured herself before the court. During the hearing, Defendant Wheeler requested to withdraw A.N.F.'s enrollment in the Cumberland school and return it to Dauphin County against his mother's calculated decision to avoid the Defendants jurisdictional abuse of power. Defendant Wheeler's request was denied by Defendant Edward E. Guido. Defendant Wheeler was questioned by Defendant Guido as to why she had withheld A.N.F.'s attendance at school.

138.  Between November 8, 2023, through November 15, 2023, CCCYS confirmed that there was no imminent risk to the Feinberg children despite the exhaustive claims by the Defendants. Sandy Gibson, LCSW, stated that she "found it odd", that the children had been removed without their clothing and belongings when they were not being harmed and all their needs were being met, unlike the incident of the Smith children who were naked and soiled when they were found by Police officer Christian Ribec.

139.  On November 16, 2023, CCCYS withdrew DCCYS's petition for Dependency, and the Plaintiff's children were returned without adjudication.

140.  Plaintiff cooperated with CCCYS reluctantly by signing releases of her private information regarding medical and mental health records out of fear that her children could be removed again from her care. She felt compelled through because of the Defendants abuse of power, and the actions they had taken to harm her family.

141.  Since October 2023, the Plaintiff and her children have continued to experience severe post-traumatic stress symptoms caused by the Defendants crimes. The children are fearful to sleep alone, and the presence of any authorities remind them of the horrors in Dauphin County.

142.  All aspects of the Plaintiffs life have been damaged, and affected in a way that will never be repaired. Plaintiff incurred excessive debts because of the Defendants crimes, and lost thousands of dollars in equity amidst the swift sale of her home, which she had no plans to sell, prior to the Defendants corruption, extortion, intimidation, and other crimes.

143.  The Plaintiffs credit declined due to the mortgage forbearance applied. It was also damaged due to emergency over-utilization necessary for temporary shelter for her children. As the Plaintiff and her children struggled to survive, they could not qualify for food-stamps under the

mortgage and additional rental payments built up, because there is no program guideline set up to calculate and consider this form of domestic "refugee crisis" caused by Dauphin County Children and Youth agency. Plaintiff employed survival hacks, such as watering down whole milk, increasing inexpensive carbs, i.e. rice, pasta, and purchasing unpreferred groceries that were marked down as for soon to expire or next day break at Walmart. While this may be instance that occurs in third world countries, this should not be caused to occur in a progressive democratic country who resources are endless. Most certainly, this should not be caused by the very same agency that was established to protect families and children. Legislature has failed the communities and populations by enabling such authorities to have unlimited excess discretion against innocent victims. Attempts to raise money through crowd funding were futile. The children were disenrolled from long-term community programs they could no longer access. The children were isolated from their community of friends who were afraid of the Defendants authority. She has also incurred excessive transportation costs due to the distance between her current residence and the children's school in Dauphin County. She continues to transport them, but has accrued over $15,000 in debt from the displacement, and the debts are increasing.

144.  Plaintiff has enrolled her children and placed them on waitlists for trauma therapy as a result of the unlawful separation of her children and herself, and emotional distress caused by it.

145.  Plaintiff has suffered significant emotional distress and harm to her professional and personal reputation and capacity, since her network of friends and employment are engaged in the field of mandated reporting; teaching, counseling, etc.

146.  The Plaintiff and her children have been displaced and distanced from their family and friends residing in Dauphin County, and from long term programs Plaintiff had her children enrolled in because of the violations and crimes committed by the Defendant's.

147.  The Plaintiff's children have lost relationships with friends since their parents fear the county agency's retaliation.

148.  Under local, state, federal and color of state law, each named Defendant has committed RICO crimes pursuant to Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO") which is prohibited by Federal Law.

149.  Pursuant to the Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal RICO"), Title 18, U.S.C., § 241, Title 18, U.S.C., § 242, Title 18, U.S.C., § 245, Title 18, U.S.C., §

246, Title 18, U.S.C., § 373, Title 18, U.S.C., § 1201, Title 18, U.S.C., §

1204, Title 18, U.S.C., § 1503, Title 18, U.S.C., § 1505, Title 18, U.S.C., §

1506, Title 18, U.S.C., § 1510, Title 18, U.S.C., § 1511, Title 18, U.S.C., §

1512, Title 18, U.S.C., § 1513, Title 18, U.S.C., § 1514, Title 18, U.S.C., §

1518, Title 18, U.S.C., § 1592,  Title 18, U.S.C., § 1623, Title 18, U.S.C., §

1621, Title 18, U.S.C., § 1622, Title 18, U.S.C., § 1623, Title 18, U.S.C., §

1957, Title 18, U.S.C., § 2236, Title 18, U.S.C., § 2237, Title 18, U.S.C., §

2340, Title 18, U.S.C., § 4304,  and Title 18, U.S.C., § 6301 for declaratory

and injunctive relief, as well as nominal, punitive, and compensatory relief,

to redress and to prevent the deprivation of rights, privileges, caused by the

Defendants crimes under the by way of Organized Crime, pursuant to the

Federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §

1964(c)) ("Federal RICO"). The Defendants, having not acted lawfully in

their individual and personal capacities, and having committed State and

Federal violations both civil and criminal; are allegedly guilty of the

following crimes.

## COUNT I

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron,
Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily
Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie
Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson,
Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam
Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa

Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Samuel Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO") and 18 U.S.C. 1501-1519).

## COUNT II

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Samuel Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO") and 18 USC § 201).

## COUNT III

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa

Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Samuel Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO")) and 18 U.S.C. § 1509-1513.)

## COUNT IV

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Sam Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO")) and 18 U.S.C § 872.)

## COUNT V

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa

Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Sam Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO")) and 18 U.S.C § 1512.)

## COUNT VI

(Plaintiff Hadassah Feinbergs claim against Defendants Ferdinand Cintron, Josh Shapiro, Francis Chardo, Colin Zwally, Michelle Avery, Emily Hoffman, Joshua Young, Jeff Enders, Stephen Libhart, Sally Lupini, Carrie Self, Gabi Williams, Valerie Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey Dickerson, Andrew Bath, Christian Ribec, Adam Young, Lee Ann Tarasi, Robert Martin, Marcie Smith, Eric Smith, Rosa Cruz, Mandjou Sylla, Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Kenny Young, Tom McGarrity, Thomas Carter, Marisa McClellan, Kim Deibler, Scott Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanda Ozenbaugh, George P. Hartwick, III., Julie Reis, Currin Haines-Yoder, Andrea Martin, Sean McCormack, Tamara B. Willis, Erika Martel, Michael Palermo, John F. Cherry, John J. McNally, Matthew P. Smith, Kimberley Kardelis, Edward E. Guido, Wayne A. Jacobs, Bridget Whitley, Brad Winnick, Sam Goldberg, James Schwartzman, Rufus Seth Williams, Larry Krasner, Marlon Osbourne, Stephen Olszewski, and Anna M. Ciardi: for their violation of 18 U.S.C. § 1964(c)) ("Federal RICO")) and 18 U.S.C § 1201.)

150.  Plaintiff, Hadassah Feinberg, re-alleges and incorporates by reference all allegations contained in the forgoing paragraphs of this Complaint as if fully set forth herein.

151.  Under violations of crimes listed under the Federal Racketeer

Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c)) ("Federal

RICO"), Defendants Francis Chardo, esq.,Colin Zwally, esq., Michelle

Avery, Emily Hoffman, esq., Joshua Young, Esq., Wayne A. Jacobs, Jeff

Enders, Stephen Libhart, Sally Lupini, Carrie Self,  Gabi Williams, Valerie

Arkoosh, Vincent Paese, Laval Miller-Wilson, Andrea Bankes, Corey

Dickerson, Andrew Bath, Christian Ribec, Aj Young, Lee Ann Tarasi,

Robert Martin, Marcie Smith, Eric Smith, Rosa Cruz, Mandjou Sylla,

Joshua Appleby, Alyssa Schatz, Kathryn Crowell, Lenny Young, Tom

McGarrity, Thomas Carter, Marisa McClellan, esq., Kim Deibler, Scott

Smith, Lisa Wheeler, Noelle Barrett, Allison Vajdic, Amanmda Ozenbaugh,

George P. Hartwick III, Julie Reis, Currin Haines- Yoder, Gerard M. Karam,

esq., Andrea Martin, Sean MCCormack, esq., Tamara B. Willis, Erika

Martel, Michael Palermo, esq., John F. Cherry, Judge, John J. McNally,

Judge, Matthew P. Smith, Judge, Kimberley Kardelis, esq., Edward E.

Guido, Judge, Wayne A. Jacobs, and Anna M. Ciardi, have violated local,

state, and federal laws and continue to violate and harm the Plaintiffs and

numerous other victims through their racket and entity.

152.  As a direct result of said Defendants' actions taken Plaintiff

Feinberg and her minor children:

a.   have been forced to flee their home of residence

b.   have been deprived of their civil rights guaranteed to them under the statutes of the United States;

c.   are in imminent danger of being harmed further as retaliation for exposing the entity and organized criminal racket.

153.   If not enjoined by this Court, said defendants will continue to commit organized crime defined under the Federal Act thereby causing irreparable harm, damage, and injury to all the victims for which there is no adequate remedy at law. This lawsuit is multi-jurisdictional, and a lawsuit may be brought for RICO crimes in any state where a Defendant resides. Defendant Ferdinand Cintron Jr. resides in Maryland and therefore a lawsuit in the federal court of Maryland is permissible. In efforts to avoid a conflict of interest, this lawsuit is lodged outside the state of Pennsylvania within 100-mile radius. Plaintiff is in possession over 1000 pages of physical evidence supporting her claims and the claims of the other victims harmed by the Commonwealth Enterprise. The physical evidence will be provided during discovery.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.  enter a judgment based upon treble damages for losses incurred to Plaintiff's person and property.

   i.  that to the extent their actions are found by a jury trial to be criminal in nature, as defined by the Federal "RICO" act,

b.  enter a permanent injunction:

   i.  barring Defendants from engaging in additional organized crimes in response to this lawsuit.

c.  award Plaintiff treble and nominal damages; in the amount of $10,000,000.

d.  award Plaintiff such additional relief the Court deems just and proper; and

e.  enter a judgment awarding Plaintiff their costs associated with legal fees incurred as a *pro se* litigant pursuant to 42 U.S.C. § 1988.

Dated: June 28, 2024

Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa. 17112
717-571-7021
H_feinberg@yahoo.com

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on June 28, 2024, I filed the foregoing

*Table of Contents, Complaint, Application for In Forma Pauperis, Civil*

*Cover Sheet, and Summons,* by Electronic Document Submission System

and on July 1, 2024, by USPS Certified|Mail to the United States District

Court by USPS Certified Mail and upon the following individuals:

United States District Court - District of Maryland
101 West Lombard Street
Baltimore, MD  21201

Ferdinand Cintron, Jr.
601 East Fayette Street,
Baltimore, Maryland 21202.

Gov. Josh Shapiro
2035 North Front Street
Harrisburg, Pennsylvania 17102.

Dauphin County District Attorney's Office for
DA Francis Chardo, Esq., ADA Colin Zwally, Esq.
Michelle Avery, Emily Hoffman, Esq.
101 Market Street,
Harrisburg, Pa. 17101

Joshua Young, Esq.
333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Wayne A. Jacobs

600 Arch Street #8,
Philadelphia, Pa. 19106

Jeff Enders
911 Gibson Blvd.
Steelton, Pa. 17113

Stephen Libhart
101 Market Street,
Harrisburg, Pa. 17101

Department of Human Services for
Sally Lupini, Carrie Self, Gabi Williams,
Valerie Arkoosh, Andrea Bankes, Laval Miller-Wilson
2525 North 7th Street,
Harrisburg, Pa. 17110

Vincent Paese
333 Market Street,
16th Floor,
Harrisburg, Pa. 17101

Corey Dickerson
2 South 2nd Street, #3,
Harrisburg, Pa. 17101

Susquehanna Township Police Department for
Adam Young, Lee Ann Tarasi, and Robert Martin
1900 Linglestown Rd.,
Harrisburg, Pa. 17110

Marcie Smith and Eric Smith
503 State Street,
Steelton, Pa. 17061

Rosa Cruz
63 North 18th Street,
Harrisburg, Pa. 17103

Mandjou Sylla

63 North 18th Street,
Harrisburg, Pa. 17103

Alyssa Schatz
111 S. Front Street,
Harrisburg, Pa. 17101

Kathryn Crowell
500 University Drive,
Hershey, Pa. 17033

Andrew Bath, Christian Ribec, Joshua Appleby, Tom McGarrity, Thomas
Carter,
and Kenny Young
123 Walnut Street, #217,
Harrisburg, Pa. 17101

Dauphin County Children and Youth Services for
Marissa McClellan, Esq., Kim Deibler, Scott Smith,
Lisa Wheeler, Noelle Barrett,Allison Vajdic,
Samantha Ozenbaugh, and Currin Haines-Yoder,
Kimberley Kardelis, Erika Martel
1001 North 6th Street,
Harrisburg, Pa. 17102

Dauphin County Commissioners Office for
George P. Hartwick III and Julie Reis
2 South 2nd Street,
4th Floor,
Harrisburg, Pa. 17101

Andrea Martin
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Sean McCormack, Esq.
1 Courthouse Square,
Floor 2,
Carlisle, Pa. 17013

Tamara B. Willis
1201 North Progress Avenue,
Harrisburg, Pa. 17109

Michael Palermo, Esq.
3300 E. Trindle Rd.,
Camp Hill, Pa. 17011

John F. Cherry, Judge
101 Market Street,
Harrisburg, Pa. 17101

John J. McNally, Judge
101 Market Street,
Harrisburg, Pa. 17101

Matthew P. Smith, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Edward E. Guido, Judge
1 Courthouse Square,
Carlisle, Pa. 17013

Marlon Osbourne
3561 SW 10th St.
Pompano Beach, FL 33069

DA Larry Krasner
3 S Penn Sq,
Philadelphia, PA 19107

Samuel Goldberg
130 E 18th St #6G
New York, NY 10003

Bridget Whitley and Brad Winnick
101 Market Street,
Harrisburg, Pa. 17101

James Schwartzman
1500 Market St 18th Floor,
Philadelphia, PA. 19146

Rufus Seth Williams
1322 S. 26TH Street,
Philadelphia, Pa. 19146

Brian Wolfe
8000 Bretz Drive,
Harrisburg, PA 17112

Pennsylvania State Police for
Paige Kulsa and Bryan R. Henneman
2 Dunwoody Drive
Carlisle, PA 17015

Rogette Harris
101 Market Street,
Harrisburg, Pa. 17101

Stephen Olszewski
240 Spring Garden St.
Philadelphia, PA 19123

Anna M. Ciardi
437 Grant Street
Suite 1300
Pittsburgh, Pa. 15219

Date: June 28, 2024                    Respectfully submitted,

Hadassah Feinberg – *Pro Se*
102 Carolyn Street
Harrisburg, Pa 17112
(717) 571-7021
H_feinberg@yahoo.com